**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| BARRY CASH,<br><br>              Plaintiff,<br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social Security<br>Administration,<br><br>              Defendant. | No. EDCV 09-1150 CW<br><br>DECISION AND ORDER |

    The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for payment of benefits.

### I. BACKGROUND

    Plaintiff Barry Cash was born on November 16, 1961 and was forty-six years old at the time of his administrative hearing. [Administrative Record ("AR") 8, 18.] He has a ninth grade education and past relevant work experience as an electrician's helper, building

maintenance/repair person, and machine cutter. [AR 18.] Plaintiff alleges disability on the basis of low back pain, left leg and ankle pain, pain in the right shoulder, and schizoaffective disorder. [AR 10.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on June 12, 2009, and filed on June 23, 2009. On December 3, 2009, defendant filed an Answer and Plaintiff's Administrative Record ("AR"). On March 22, 2010, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff Barry Cash applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on June 8, 2007, alleging disability since July 1, 2006. [JS 2; AR 8.] After the application was denied initially and on reconsideration, an administrative hearing was held on November 7, 2008, before an Administrative Law Judge ("ALJ"). [Transcript, AR 8.] Plaintiff appeared with counsel, and testimony was taken from Plaintiff and a vocational expert. [Id.] The ALJ denied benefits in a decision dated March 11, 2009. [Decision, AR 5.] When the Appeals Council denied review on May 7, 2009, the ALJ's decision became the Commissioner's final decision. [AR 1.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of

legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

**V.   DISCUSSION**

**A.   THE FIVE-STEP EVALUATION**

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2006 (step one) and that Plaintiff had the following "severe" impairments: status post fractures to the left ankle, left fibula and right shoulder; musculoligamentous sprain/strain to the lumbar spine, schizoaffective disorder and a history of substance abuse (step two). [AR 10.] Plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 11.] Plaintiff was found to have an RFC enabling him to perform a limited range of light work including lifting and carrying ten pounds frequently and twenty pounds occasionally. Id. He was found able to stand and walk for two hours out of an eight-hour work day and sit for six hours out of an eight-hour work day. Id. Finally, the ALJ found that his mental impairments limit him to simple, repetitive tasks. Id. The ALJ thus determined that Plaintiff cannot perform his past relevant work (step four). [AR 18.] The ALJ cited the vocational expert ("VE") testimony that a person with Plaintiff's RFC would be able to perform several jobs that exist in significant numbers in the national economy such as assembler, inspector, or packager (step five). [AR 19.] Accordingly, Plaintiff was found not "disabled" as defined by the Social Security

---

work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

Act. Id.

**C.   ISSUES IN DISPUTE**

The parties' Joint Stipulation sets out the following disputed issues:

1. Whether the ALJ properly considered the treating psychiatrist's opinion regarding the Client's Dysfunction Rating and Behavioral Evidence.
2. Whether the ALJ properly considered lay witness testimony.
3. Whether the ALJ posed a complete hypothetical question to the Vocational Expert.

[JS 2.]

Because Issue One is dispositive, the court need not reach the additional grounds raised in the Joint Stipulation.

**D.   ISSUE ONE: DR. MEJIA**

In his first claim, Plaintiff alleges that the ALJ did not properly consider the opinion of Dr. Marissa Mejia, M.D., who was Plaintiff's treating psychiatrist since September of 2006. [JS 3, AR 209-210.]

**Background**

Plaintiff first sought mental health treatment from the San Bernadino County Department of Behavior Health on July 18, 2006, at the behest of his sister. [AR 294-97.] According to the record, Plaintiff was first examined on August 3, 2006 by Dr. Thuy Huynh Nguyen, M.D. [AR 216.] After noting Plaintiff's manic symptoms and paranoia, Dr. Nguyen's diagnostic impression was that Plaintiff suffered from schizoaffective disorder of the bi-polar type. [Id.] Dr. Nguyen referred Plaintiff to Dr. Mejia for further treatment. [Id. at 217.] On September 7, 2006 Dr. Mejia performed an Adult

Psychiatric Evaluation on Plaintiff. [AR 209-210.] Plaintiff reported that he had been hearing voices and feeling paranoid and depressed since age 17 or 18. [Id. at 209.] Dr. Mejia noted symptoms of mania including racing thoughts, fast talking, bizarre behavior and impulsivity. [Id.] Dr. Mejia's Mental Status Examination revealed Plaintiff to have both auditory and visual hallucinations, and paranoid delusions. [Id. at 210.] Dr. Mejia's diagnosis was that Plaintiff suffered from Bipolar Disorder, Type 1 (provisional) and Schizoaffective Disorder, thereby confirming Dr. Nguyen's diagnosis. [Id.]

Plaintiff continued treatment with Dr. Mejia, visiting her office consistently from the date of his first examination. [AR 204-07, 274-88.] Her treatment notes state that Plaintiff responded to his medications and experienced hallucinations and paranoia with less frequency. [AR 206-07, 276, 280-81.] On March 26, 2008, Dr. Mejia completed a Work Capacity Evaluation (Mental) form, assessing Plaintiff as having moderate to extreme functional limitations. [AR 299-300.] Plaintiff had marked limitations in nine of sixteen categories and extreme limitations in two categories.[2] [Id.] Dr. Mejia

---

[2] Marked limitation is defined as "Serious limitations in this area. The ability to fnction in this area is severely limited but not precluded." [AR 299.] Extreme limitation is defined as "Severe limitations in this area. No useful ability to function in this area." Id. Plaintiff was assessed as having marked limitations in the ability to: remember locations and work-like procedures; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions. [Id.] Plaintiff was further assessed as

concluded that she anticipated that Plaintiff would be absent from work three days or more per month. [Id.]

**The Commissioner's Finding**

The ALJ declined to give significant weight to Dr. Mejia's opinion. [AR 17.] His first reason for rejecting her opinion was "that Dr. Mejia's opinion was tendered on a check-box form." Id. The ALJ further stated that Plaintiff's "marked and extreme limitations are unsupported by (Dr. Mejia's) own treatment notes." Id. Finally, the ALJ gave Dr. Mejia's opinions less weight because her treatment notes showed that the claimant's condition "is stable with medication, and his alleged hallucinations and paranoia are minimal." [Id.]

**Discussion**

It is well-settled that the opinion of a treating physician is entitled to deference in the Commissioner's disability determination. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). By rule, if a treating physician's opinion is "well-supported by medically acceptable clinical . . . techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R § 404.1527(d)(2). Yet in some cases, the Commissioner may reject a treating physician's opinion that is "brief and conclusory" in the form of a "checklist" with "little in the way of clinical findings to support that conclusion that appellant was totally disabled." Batson v. Commissioner of Social Sec. Admin.,

---

having extreme limitations in the ability to: respond appropriately to changes in the work setting and the ability to set realistic goals or make plans independently of others. [Id.]

359 F.3d 1190, 1195 n.3 (9th Cir. 2004).[3]  However, if the ALJ rejects the opinion of the treating physician, he must support his findings by presenting "a detailed and thorough summary of the facts and conflicting clinical evidence." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Magallanes, 881 F.2d at 751).

Here, here the ALJ rejected the treating physician's findings on the cited grounds that they were rendered on a checklist form and unsupported by the medical record. [AR 17.]  However, the record shows that Dr. Mejia's assessment was well supported by extensive treatment notes and by the opinion of her colleague, Dr. Nguyen.  [AR 206-07, 216, 276, 280-81.]  The ALJ relied on evidence in the record that Plaintiff's hallucinations and paranoia were reduced by medication. [AR 17.]  However, there is no documentation that Plaintiff was completely free from hallucinations or paranoia at any time during his treatment.  [AR 206-07, 276, 280-81.]

Dr. Mejia's treatment notes detail that Plaintiff experienced varying levels of hallucinations and paranoia throughout his treatment, beginning with his visit of September 7, 2006, where Dr. Mejia noted the presence of auditory and visual hallucinations and paranoid delusions which Plaintiff experienced beginning at age seventeen or eighteen. [AR 209-10.]  After Plaintiff began treatment and regular medications, Dr. Mejia noted, on January 8, 2007, Plaintiff "doesn't hear voices as often." [AR 208.] On April 16 2007

---

[3] See also Connett v. Barnhart, 340 F.3d 871, 874-875 (9th Cir. 2003) (holding that the ALJ did not err in rejecting the controverted opinion of a treating physician whose restrictive functional assessment was not supported by treatment notes); Holohan v. Massanari, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001)(stating that a physician's opinion may be "entitled to little if any weight" where the physician "presents no support for her or his opinion").

9

Dr. Mejia recorded Plaintiff "has occasional auditory hallucinations and residual paranoia" and on June 4 "still has auditory hallucinations . . . and paranoia." [AR 206-07.]  Plaintiff was evaluated by Mental Health Nurse Leonida Gutierrez on August 29, 2007, when he admitted to hearing voices and feeling paranoid.  [AR 282.]  Likewise, on October 17, 2007, Dr. Mejia noted ongoing auditory hallucinations and paranoia. [AR 281.]  On December 5, 2007, Dr. Mejia's notes indicate Plaintiff was doing "fairly well," but felt paranoid around people. [AR 280.]  In 2008, Plaintiff was documented as feeling "less paranoid" on January 30, although he again complained of paranoia during a visit on March 16, 2008. [AR 279, 282.] Combined, these instances support Dr. Mejia's opinion that Plaintiff's hallucinations and paranoia are severe and that he has marked or extreme impairments even with medication.  Accordingly, specific and legitimate reasons based on substantial evidence in the record were not provided to discount Dr. Mejia's opinion, and reversal on the basis of this issue is required.  Lester, 81 F.3d at 830.

### E. REMAND FOR PAYMENT OF BENEFITS

The decision whether to remand for further proceedings is within the discretion of the district court.  Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  Harman, 211 F.3d at 1179.  However, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. (decision

whether to remand for further proceedings turns upon their likely utility).

Here, as set out above, specific and legitimate reasons supported by substantial evidence in the record were not provided to reject Dr. Mejia's opinion; accordingly, it is credited as true. Harman v. Apfel, 211 F.3d at 1178; Lester v. Chater, 81 F.3d at 834. As noted above, at the administrative hearing, the vocational expert testified that a person with Plaintiff's ascribed RFC limitations could perform the jobs of assembler, inspector or packager. [AR 49.] Plaintiff's attorney posed an alternative hypothetical as to an individual who was "10 percent off task due to the individual's mood swings or mental distractions," consistent with Dr. Mejia's assessment. [AR 50.] The expert replied that he did not believe said individual could do the identified jobs. [Id.] See generally Harman v. Apfel, 211 F.3d at 1180 (citing cases where award of benefits was directed when there was vocational expert testimony that the limitations established by improperly discredited medical evidence would render claimant unable to work).

Moreover, even absent specific vocational expert testimony at Plaintiff's hearing, Dr. Mejia's assessment that Plaintiff would be absent from work three or more days per month further indicates that a disability finding would be required. See Dennis v. Astrue, 655 F. Supp. 2d 746, 753 (W.D. Ky. 2009)(VE testified that employers typically will tolerate no more than two absences per month on a consistent basis); Dambrowski v. Astrue, 590 F. Supp. 2d 579, 584 (S.D. NY 2008)(VE testified that claimant who missed work on average three days per month could not sustain any jobs indicated); Wright v. Barnhart, 389 F. Supp. 2d 13, 19 (D.Mass. 2005)(VE testified that no

occupation would tolerate three absences per month); Campbell v. Barnhart, 374 F. Supp. 2d 498, 502 (E.D. Tex. 2005)(VE testified that three absences per month would preclude competitive employment); McGraw v. Apfel, 87 F. Supp. 2d 845, 852 (N.D. Ind. 1999)(VE testified that claimant could not perform any work with more than two absences per month); Connor v. Shalala, 900 F. Supp. 994, 1003 (N.D. Ill. 1995)(VE testified that an unskilled job would not tolerate more than two absences per month on a consistent basis). Under these circumstances, remand for payment of benefits is appropriate. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004)(remanding for payment of benefits despite lack of extensive vocational expert testimony because claimant's "entitlement to disability benefits is clear").

## VI. ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED**.

2. This action is **REMANDED** to defendant for payment of benefits.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: July 20, 2010



CARLA M. WOEHRLE
United States Magistrate Judge